**SO ORDERED.**

**SIGNED May 1, 2012.**



_____
**ROBERT SUMMERHAYS**
**UNITED STATES BANKRUPTCY JUDGE**
_____

```
             UNITED STATES BANKRUPTCY COURT
              WESTERN DISTRICT OF LOUISIANA

   IN RE:

   BASS, LTD.,                              CASE NO. 11-51393

       Debtor                               Chapter 11

   -----------------------------------------------------------------
   BASS, LTD.,

       Plaintiff

   VERSUS                                   ADVERSARY NO. 11-05048

   CITY OF NEW IBERIA and
   SPANISH TOWN INVESTMENTS, LLC,

       Defendants

   -----------------------------------------------------------------
                        MEMORANDUM OPINION
   -----------------------------------------------------------------
```

The present matter involves a motion for summary judgment filed by defendant City of New Iberia (the "City") challenging claims brought by the debtor, Bass, Ltd. arising from a lease of land for the specific purpose of erecting and maintaining an

advertising billboard. The dispute centers on whether the Lease was terminated pre-petition as well as the validity of a right of first refusal contained in the Lease. Bass also filed a cross motion for summary judgment seeking a declaration that the Lease was not validly terminated prior to the commencement of the bankruptcy case. The court took the motions under advisement following a hearing. After reviewing the summary judgment record and considering the relevant authorities, the court GRANTS the City's motion for summary judgment in part and DENIES the motion in part. The court GRANTS Bass' motion for summary judgment with respect to the termination of the Lease.

## BACKGROUND

On January 12, 2000, Bass entered into a non-residential real property lease with Segura Enterprises (the "Lease") for an initial term of fifteen (15) years. The Lease was recorded in Iberia Parish, Louisiana on April 18, 2002. The purpose of the Lease was for the construction and maintenance of an outdoor advertising billboard on U.S. Highway 90 West in New Iberia, Louisiana. The Lease provided for a right of first refusal allowing Bass to purchase all or part of the property subject to the Lease "for a sum no greater than the sales price to the interested purchaser." In October 2006, Segura Enterprises sold the property subject to

-2-

the lease to Spanish Towne Investments, LLC. Bass was not notified of the sale at the time and received no offer from Segura Enterprises to purchase the property. According to Bass, it did not learn of the sale until March 22, 2007. Nevertheless, Bass did not challenge the sale and forwarded payments due under the Lease to Spanish Towne. In February 2009, Spanish Towne sold the subject property to the City. Again, Bass was not informed of the sale and did not receive an offer pursuant to its right of first refusal. According to Bass, it did not learn of the sale to the City until December 2009. Bass did not challenge the sale to the City at this time. Moreover, Bass submitted past-due lease payments to the City in early 2011. The City refused the tender of lease payments.

On March 29, 2011, Bass received a letter from Segura Enterprises purporting to cancel the Lease for non-payment of lease obligations. Bass also received correspondence dated April 20, 2011 and May 17, 2011 from the City purporting to terminate the Lease and requesting that Bass remove its billboard from the leased property. The City contends that Bass' billboard interferes with a municipal construction project and the access road to that project. On May 23, 2011, Bass filed suit in the 16th Judicial District Court in Iberia Parish against the City and Spanish Towne. Following the commencement of the bankruptcy case, the suit was removed to this court. After removal, Bass filed an amended

-3-

complaint adding Segura Enterprises as a defendant. The primary thrust of the amended complaint is (1) a request that the court declare that the Lease was not terminated prior to the bankruptcy filing, (2) a request to enforce the right of first refusal through injunctive relief and/or specific performance, and (3) a declaration that the sale of the property to the City is null and void. Bass, however, also asserts claims for breach of warranty of peaceful possession as well as a request for injunctive relief with respect to the City's refusal to renew Bass' permit for the billboard. The motions for summary judgment do not address all of the claims and relief requested in the amended complaint.

## DISCUSSION

**A. Summary Judgment Standard.**

Summary judgment is proper if the pleadings, discovery products on file, and affidavits show that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P 56). The purpose of summary judgment is to pierce the pleadings and to assess the proof to determine whether there is a genuine need for trial. See Matsushita Electric Industries v. Zenith Radio Corp. 475 U.S. 574, 587 (1986). Summary judgment procedure is designed to isolate and dispose of factually unsupported claims or defenses. Celetex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Where the movant does not

-4-

bear the burden of persuasion, the movant may satisfy its summary judgment burden by pointing to an absence of evidence supporting an essential element of the non-moving party's claim. Celetex Corp., 477 U.S. at 324-326 (absence of support for an essential element of the plaintiff's claim entitles the defendant to summary judgment unless in response the plaintiff non-movant sets forth facts that permit a reasonable trier of fact to find for the plaintiff on that essential element of his claim). Assuming that the movant has met this burden, the non-movant plaintiff must come forward with "substantial evidence" supporting the essential elements challenged in the motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In other words, the evidence must be sufficient to withstand a motion for directed verdict and to support the verdict of a reasonable jury. Id. Under this standard, the non-movant cannot rely on unsupported assertions or arguments, but must submit sufficiently probative evidence supporting the essential elements of its claims challenged in the motion for summary judgment.

**B. Pre-petition Termination of Bass' Lease.**

The City seeks summary judgment on Bass' request for a declaratory judgment that the Lease was not terminated prior to the filing of the bankruptcy case on September 27, 2011. The parties' dispute centers on paragraphs 13 and 18 of the Lease. Paragraph 13 states:

-5-

> "The Lessor shall have the right to cancel this lease if the following condition exists: In the event the advertising display erected on described property interferes with a construction or renovation project or prevents the Lessor from selling and/or leasing the property upon which the advertising structure is located, for any purpose other than outdoor advertising, as evidenced by a building permit or lease or sale contract to be presented to Lessee for inspection. If any of the described leased property is not utilized for such building or renovation or part of the property is not to be sold or leased, the Lessee has the option to use the remaining portion on the same terms. If Lessor does cancel this lease, Lessor agrees to refund to the Lessee any prorated yearly rent previously paid for the unexpired portion of this lease. Lessee agrees to remove the advertising structure within ninety (90) days of written notice to Lessee of the Lessor's cancellation of lease."

(City's Motion for Summary Judgment, Exhibit No. 1 at ¶ 13). Paragraph 18 of the Lease addresses lapses in rent payments: "In the event that payment is not received on time, Lease shall not be cancelled unless [sic] notified in writing and given thirty (30) days to remedy payment problems." The City contends that the Lease was cancelled under paragraph 13 in April 2011 because Bass' sign interferes with the City's construction project and points to its April 20, 2011 and May 17, 2011 letters notifying Bass that the Lease was terminated. Alternatively, the City argues that the Lease was terminated by the March 29, 2011 letter to Bass from Segura Enterprises purportedly cancelling the Lease on the grounds

-6-

that the land had been sold and Bass had failed to make monthly lease payments under paragraph 5 of the Lease. Bass responds that the Lease was not terminated by either letter because Segura and the City never complied with the termination requirements in paragraphs 13 and 18 of the Lease.

The court concludes that the Lease was not terminated as a result of the City's actions before the filing of the bankruptcy case. As to interference with the City's construction project, paragraph 13 of the Lease specifically provides that Bass is entitled to inspect a copy of a building permit showing that its billboard interferes with the lessor's construction or renovation project. At the hearing on the motions, the City argued that it could not comply with this provision because there would be no building permit for a city-owned project. The flaw in this argument, however, is that *nothing* was provided to Bass supporting the City's claim that Bass' billboard interfered with its construction project. At the very least, paragraph 13 requires some evidence – whether a building permit or otherwise – that establishes the City's right to terminate under paragraph 13. Otherwise, Bass would be unable to determine whether, under paragraph 13, it could use any other portion of the leased property without interfering with the City's construction project.

-7-

Accordingly, the City's April 20, 2011 and May 17, 2011 letters did not terminate the Lease under paragraph 13.

The Lease was also not terminated as a matter of law by the March 29th letter by Segura Enterprises. First, at the time of the letter, Segura was no longer the owner and lessor of the property and, therefore, could not have invoked termination under paragraphs 5 and 18 of the Lease for non-payment of the monthly lease obligations. Rather, the City was the owner of the property, and under the terms of the recorded Lease, assumed Segura's rights and obligations under the Lease. Second, even if Segura had standing to terminate the Lease for non-payment of monthly lease obligations, paragraph 18 of the Lease provides that Bass was entitled to a thirty-day cure period for bringing the lease payments current. Bass tendered past-due monthly lease payments to the City within the thirty-day period following Segura's termination letter. This tender was sufficient to preserve the Lease under paragraph 18 even though the City refused the tender. Finally, Segura's March 29th letter could not terminate the Lease based solely on the sale of the property to the City. By the express terms of the Lease, any purchaser of the property was bound by the terms of the Lease, and the Lease was duly recorded. See La. Civ. Code Art. 2711 ("[t]he transfer of the leased thing does not terminate the lease, unless the contrary had been agreed

-8-

between the lessor and the lessee.")[1] Accordingly, the Lease was not terminated by the 2006 and 2009 sales.

**C. Enforceability of Bass' Right of First Refusal**.

The City's Motion for Summary Judgment also challenges Bass' enforcement of the right of first refusal in the Lease. Louisiana Civil Code Article 2625 provides that a party "may agree that he will not sell a certain thing without first offering it to a certain person." Article 2625 further provides that this "right given to the latter in such a case is a right of first refusal that may be enforced by specific performance." A right of first refusal involving an immovable binds third parties if it is properly recorded. The right may be enforced by an action seeking specific performance or damages. If an immovable has been conveyed in violation of a properly recorded right of first refusal, the obligee may enforce the right against the third party buyer by avoiding the conveyance. The City posits three grounds for summary judgment with respect to the right of first refusal. First, the City contends that the Lease was not originally authorized or signed by all of the undivided co-owners of the property subject to

---

[1] Paragraph 17 of the Lease provides that the Lease "shall become part of any transaction which constitutes the sale and/or lease of the described property herein" and that the Lease "shall be transferred to the new owner(s) or lessor(s)."

-9-

the Lease and, accordingly, the right of first refusal is invalid. Second, the City contends that the right of first refusal is "null and void" because the Lease does not place a time limit on the right. Third, the City contends that Bass waived the right of first refusal.

### 1. **Execution of the Lease and Right of First Refusal by all of the Co-owners**.

The City contends that the Lease and the right of first refusal is not valid because the Lease was not signed by all of the co-owners of the property subject to the Lease. Specifically, the City's summary judgment evidence shows that there were four parties who owned undivided interests in the property subject to the Lease at the time the Lease was signed: Segura Enterprises, Dailey Berard, Ray Bertrand, and Tommy Beyt. According to the City, the Lease and right of first refusal are invalid because only Segura Enterprises signed the Lease even though Segura had only a 32.5% interest in the subject property. In this regard, the City points to deposition testimony from Perry Segura that Segura only signed the Lease on behalf of Segura Enterprises and that he did not have authority to sign on behalf of the other co-owners. (Deposition of Perry Segura, pp. 12, 47).[2]

---

[2] The deposition of Perry Segura is attached as an exhibit to the City's supplemental memorandum in support of its motion for summary judgment. (See Dkt. No. 52).

-10-

Louisiana Civil Code Article 801 provides that the "use and management of the thing held in indivision is determined by agreement of all the co-owners." Accordingly, the "consent of all the co-owners is required for the lease, alienation, or encumbrance of the entire thing held in indivision." La. Civ. Code Art. 805. The City, however, is not entitled to summary judgment on this ground for at least two reasons. First, the City does not have standing as a subsequent purchaser of the property to assert a defense under Articles 801 and 805. "A co-owner who does not consent to a lease may attack the validity of the lease as being a relative nullity." Good v. Laird, 935 So. 2d 809, 813 (La. App. 2nd Cir. 2006). However, an action to nullify a lease on the grounds of lack of consent by one or more co-owners is a purely personal right "which may only be invoked by those persons for whose interest the ground for nullity was established" – i.e., the non-consenting co-owner. Id. (holding that a subsequent purchaser had no right to contest a lease on the grounds that his predecessor-in-title did not consent to the lease.") Second, even if the City had standing to challenge the validity of the Lease on the grounds that all of the co-owners did not consent, its argument merely raises a fact question as to consent and whether Segura Enterprises' execution of the Lease was ratified by the co-owners. Specifically, Articles 801 and 805 do not require all of the co-

-11-

owners to sign the Lease or manifest their consent to the Lease in writing. Id.; Schroth v. Seminole Supermarket, Inc., 829 So.2d 597 (La. App. 5th Cir. 2002). To the contrary, actions by one co-owner "if useful to all, are ratified as a *de facto* agency." Schroth, 829 So.2d at 599 (denying summary judgment on the grounds that there were material questions of fact as to whether a non-signing co-owner consented to a lease.) In the present case, the City points to deposition testimony by Perry Segura that he did not sign the Lease on behalf of the other co-owners and did not have authority to do so. This testimony does not address whether the Lease benefitted the other co-owners and, therefore, whether the Lease was "ratified as a *de facto* agency." Id. (citing Moody v. Arabie, 498 So. 2d 1081, 1085 (La. 1986).

 2. **Validity of Bass' Right of First Refusal Under La. Civ. Code. Art. 2628**.

The City next challenges the validity of the right of first refusal under Louisiana Civil Code Article 2628. Article 2628 provides that "a right of first refusal that concerns an immovable thing may not be granted for a term longer than ten years," and if "a longer time for an option or right of first refusal has been stipulated in a contract, that time shall be reduced to ten years." However, if the right of first refusal "is granted in connection with a contract that gives rise to obligations of continuous or

-12-

periodic performance...a right of first refusal may be granted for as long a period as required for the performance of those obligations." La. Civ. Code Art. 2628. The City contends that Bass' right of first refusal is invalid under Article 2628 because it is not subject to a time limit. The Lease has an original term of 15 years with an option to extend that term twice in 5-year increments. (Lease at ¶¶ 4, 16) The City, however, points out that the Lease term (and, hence, the right of first refusal) is indefinite because the Lease provides that it will continue on a year-to-year tenancy after the expiration of the original term. The court disagrees. Even before the addition of Article 2628 in 1993, courts have recognized that a right of first refusal that is made part of a lease with a definite term does not render the right of first refusal invalid even if the lease fails to state a termination date for the right. <u>Becker and Assoc., Inc. v. Lou-Ark Equipment Rentals, Inc</u>., 331 So. 2d 474 (La. 1976). To the extent that the hold-over provisions of the Lease render the right of first refusal indefinite, the proper remedy is to limit the term of the right to 10 years under Article 2628, not to declare that the right is facially void.[3] Moreover, Article 2628 provides that an

---

[3] Some courts and commentators have distinguished between true options affecting immovables on the one hand, and rights of first refusal in determining whether a right of first refusal without a limited term is void. <u>See</u>, <u>e.g.</u>, <u>Gorum v. Optimist Club</u>

agreement which "gives rise to obligations of continuous or periodic performance" may provide a right of first refusal for as long a period as is required for the performance of those obligations. La. Civ. Code Art. 2628. Here, the Lease calls for "obligations of continuous or periodic performance" over the term of the Lease. The right of first refusal is, therefore, valid under Article 2628 for "as long a period as required for the performance of those obligations."

As far as the City's contention that the right of first refusal has "prescribed" under the ten-year limitation of Article 2628, the City's argument confuses the prescription of Bass' cause of action to enforce the right of first refusal with the maximum term of a right of first refusal under Article 2628. Once Bass' right of first refusal was triggered by the first sale in 2006, Bass' cause of action to enforce the right was subject to the ten-year prescriptive period for personal actions under the Louisiana

---

of Glenmora, 771 So.2d 690 (La. App. 3d Cir. 2000) In Gorum, the court noted that "a reading of the cases ... makes it clear that the prior jurisprudence found options without a definite term to be null and void, not rights of first refusal." The Gorum court refused to find that the right of first refusal at issue was void as a matter of law. See also Title, 1 La. Prac. Real Estate § 9:25 ("Before the 1993 revision of the Civil Code articles on sales, it was held that unlike an option, the term of a right of first refusal could be indefinite; there was no requirement that the right be granted for any stated length of time.") (citing Crawford v. Deshotels, 359 So. 2d 118 (La. 1978)).

-14-

Civil Code Article 3499. Robichaux v. Boutte, 492 So. 2d 521 (La. App. 3d Cir. 1986); Peter S. Title, 1 La. Prac. Real Estate § 9:27 (2d ed.) ("Under the general rule of Civil Code Article 3499, the holder of the right of first refusal has ten years from the date of the 'triggering event,' i.e., the date that the owner violated the right by selling or offering to sell it to the third party without first offering it to the holder, within which to file suit to enforce its right.")  This ten-year prescriptive period is distinct and independent of the ten-year maximum term set forth in Article 2628.  Indeed, the prescription period could extend well beyond the term of the right of first refusal if the triggering event occurs late in that term. See Title, 1 La. Prac. Real Estate § 9:27.[4] Here, any cause of action that Bass had as a result of the 2006 or 2009 sales had not prescribed as of the commencement of the bankruptcy case.

---

[4] Title criticizes language in Burns v. Clutter, 15 So.3d 251, 254 (La. App. 1st Cir. 2009)referring to Article 2628 as a prescription period: "The court's statement is not correct because Article 2628 does not establish a prescriptive period but rather the maximum term for which a right of first refusal (or option) may be granted. Thus, if a right of first refusal is granted for a term of ten years and the owner sells the real estate to a third party during the ninth year of the term without offering it to the holder of the right of first refusal on the same terms (which would constitute a violation of the right of first refusal), the holder of the right of first refusal would have ten years from the 'triggering event' (the violation of the right of first refusal) within which to file suit to enforce his rights and undo the sale."

-15-

**3. Waiver of Bass' Right of First Refusal**.

The City further argues that, even if Bass' right of first refusal is valid, Bass waived the right by failing to exercise the right when the property subject to the Lease was sold to Spanish Towne in 2006 and the City in 2009. Bass counters by pointing out that it was never notified of the 2006 and 2009 sales and thus could not have exercised its rights under the Lease at the time of the two sales. Waiver is the international relinquishment of a known right, power or privilege. Gunderson v. F.A. Richard & Assoc., 44 So 3d 779, 790 (La. App. 3d Cir. 2010). "Waiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that is has been relinquished." Id.; (citing Gilbert v. B.D.O.W.S., Inc., 765 So. 2d 313 (2000)). A right of first refusal is typically enforced through an action seeking specific performance of the right. See Culp v. Eagle's Nest Church of Monroe, 887 So. 2d 743 (La. App. 2nd Cir. 2004); Robichaux v. Boutte, 492 So. 2d 521 (La. App. 3d Cir. 1986). However, damages are also available as a remedy in lieu of specific performance. See Culp, 887 So. 2d at 750.

In the present case, the flaw in the City's waiver argument is that it does not distinguish among Bass' remedies, nor does it

-16-

consider whether Bass may have waived some remedies but not all. The 2006 sale to Spanish Towne and then the 2009 sale to the City triggered Bass' right of first refusal, and Bass was subject to a ten-year prescriptive period for enforcing its rights under the Lease. With respect to a damages remedy, Bass' conduct after the 2006 and 2009 sales does not reflect conduct so inconsistent with the intent to enforce the right of first refusal through a damages remedy that Bass can be deemed to have waived its right to damages. On the other hand, the court agrees with the City that, even though Bass' conduct did not waive its damages claim, Bass' actions after the 2006 and 2009 sales waived its right to challenge the validity of the sale to the City and to request specific performance of the right of first refusal. Specifically, after both sales, Bass recognized the purchasers as the owners of the property by forwarding lease payments to the new owners. With respect to the City, Bass made no effort to challenge the 2009 sale when it learned of the sale in December 2009. Instead, Bass tendered rent payments to the City. The Court agrees with the City that Bass' failure to challenge the 2006 and 2009 sales and its tender of rent payments to the new owners is conduct that is so inconsistent with the right to challenge the sales and seek specific performance that Bass has waived its rights in this regard. In sum, the City is entitled to summary judgment with respect to Bass' request to

-17-

revoke the 2006 and/or 2009 sales, as well as its request for specific performance and/or injunctive relief to enforce the right of first refusal. Bass, however, retains its right to seek damages for breach of the right of first refusal.

**D. The City of New Iberia's Administrative Expense Claim**.

Finally, the City requests that, should the court declare that the Lease was terminated pre-petition, the City's expenses in removing Bass' billboard should be treated as administrative expenses under 11 U.S.C. § 503(b)(1)(A). The court denies this request. As explained previously, the Lease was not terminated prior to the commencement of the bankruptcy case.

## CONCLUSION

For the foregoing reasons, the court **GRANTS** the City's motion for summary judgment in part and **DENIES** the motion in part. The court **GRANTS** Bass' cross-motion for summary judgment with respect to whether the Lease had been validly terminated pre-petition. The parties will submit orders on their respective motions within twenty (20) days.

###

-18-